IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    Plaintiff,<br><br><br><br>    vs.<br><br><br><br>DAVID TODD BARTLETT<br><br>    Defendant, | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS AND DENYING DEFENDANT'S MOTION FOR *FRANKS* HEARING<br><br><br><br><br><br>Case No. 2:06-CR-457 DB |

      This matter is before the Court on Defendant's Motion to Suppress and Motion for <u>Franks</u> Hearing. (Dkt. Nos. 22, 48.) On April 9, 2008, the Court conducted an evidentiary hearing on the motion to suppress. Defendant David Todd Bartlett ("Bartlett") was present with his counsel, Ronald J. Yengich. The government was represented by R. Don Brown. At the conclusion of the hearing, the Court set a briefing schedule for the parties. Thereafter, on June 24, 2008, following receipt of the briefs, the Court heard oral argument on the matter. After

review and consideration of the briefs submitted by the parties, the testimony presented at the evidentiary hearing on the motion to suppress, and the oral arguments presented by counsel, the Court enters the following memorandum decision and order.

## FACTUAL BACKGROUND

Beginning in approximately late-April 2006 and continuing through June 15, 2006, Detective Cynthia Archuleta, a Deputy Sheriff with the Salt Lake County Sheriff's Office, and the Salt Lake County Narcotics Unit began investigating David Todd Bartlett concerning his involvement in narcotics.  (Tr. at 19, 34; Aff. for S.W. at 3.)  The investigation proceeded with the assistance of a confidential informant ("CI") who indicated that a Caucasian male known as "Todd" was producing methamphetamine at various locations in the county.  (Tr. at 35; Aff. for S.W. at 3.)  On May 30, 2006, Deputy Archuleta provided the CI with a photograph of "David T. Bartlett" and the CI confirmed that the man in the photograph was "Todd" and that he was the suspect that was selling methamphetamine.  (Tr. at 20, Aff. for S.W. at 3.)

Between May 30, 2006 and June 15, 2006, under the supervision and direction of narcotics officers, the CI made three separate controlled purchases of methamphetamine.  (Tr. at 19-20; Aff. for S.W. at 3.)  After each of these controlled purchases the CI confirmed that the methamphetamine was purchased from "Todd."  (Aff. for S.W. at 4.)  The first and second controlled purchases occurred at a residence believed to belong to Bartlett located at 3986 South 855 East Unit #A, Salt Lake City, Utah.  (Tr. at 37-38; Aff. for S.W. at 4.)

The third controlled purchase occurred on June 15, 2006 – the same day as the vehicle

stop and the execution of the search warrant at issue in this case.  Bartlett met the CI in a parking lot and was driving a green Subaru Impreza bearing the license plate 864 XFW.  Detective Archuleta "ran" the license plate and learned that the green Subaru was registered to Bartlett.  (Tr. at 21; Aff. for S.W. at 4.)  The CI purchased methamphetamine from a person in a Subaru and once again confirmed that the methamphetamine was purchased from "Todd."  (Tr. at 20; Aff. for S.W. at 4.)

     The substance purchased by the CI on June 15, 2006 was "very moist."  (Tr. at 21; Aff. for S.W. at 4.)  Detective Archuleta knew from her training and experience that this was indicative of recent manufacture.  (Aff. for S.W. at 4.)  In addition, the CI told Detective Archuleta that Bartlett was currently at the Motel 6 cooking methamphetamine.  (Tr. at 21, 22, 39.)  At the evidentiary hearing, Detective Archuleta acknowledged that in her affidavit in support of the search warrant she stated only that the CI told her Todd was "in the process of cooking meth" and failed to further indicate that the CI also identified the location of the lab as the Motel 6.  (Tr. at 40.)  Despite the omission in her affidavit, at the hearing Detective Archuleta testified specifically and repeatedly that the CI indicated both that Bartlett was in the process of cooking meth and he was doing so at the Motel 6.  (Tr. at 21, 22, 39.)

     After receiving this information, Detective Archuleta located Bartlett's green Subaru Impreza parked in a parking stall at the Motel 6.  (Tr. at 21; Aff. for S.W. at 5.)  Officer Archuleta spoke with the Motel 6 general manager who confirmed that Bartlett was registered for a room at the motel.  (Tr. at 21.)  Thereafter, Detective Archuleta, with the assistance of approximately three additional detectives, conducted surveillance on Bartlett's room for a

3

"couple of hours." (Tr. at 11-12, 21.) During this surveillance, Detective Archuleta observed what she believed were additional drug transactions, between Bartlett and others, outside Bartlett's second-floor motel room. (Tr. at 21, 22.) In one instance, Detective Archuleta observed a male approach the balcony in front of room 216 and then observed Bartlett step out of room 216 and engage in a brief "hand-to-hand" transaction with the male visitor. (Tr. at 24.) In a separate instance but during the same surveillance, Detective Archuleta observed another male enter Bartlett's motel room and stay for "a couple of minutes at the most" before exiting and leaving the scene. (Tr. at 24.) Detective Archuleta also observed an unknown female leave room 216 and later re-enter carrying a plastic grocery-type bag. (Aff. for S.W. at 5.)

In addition to this information, during the course of the investigation, Detective Archuleta conducted a records check of Bartlett on a criminal database maintained by the Bureau of Criminal Identification. The records check revealed that Bartlett had a criminal history of Robbery, Possession of a Controlled Substance, Manufacture of a Controlled Substance, and Possession of a Controlled Substance with Intent to Distribute. (Aff. for S.W. at 5.) In addition, a fellow officer informed Detective Archuleta that Bartlett had just been released from prison and "may be manufacturing Methamphetamine in the Salt Lake County area." (Aff. for S.W. at 3.)

Based on the information Detective Archuleta had received up to this point, and while sitting in the parking lot of the Motel 6 conducting additional surveillance, Detective Archuleta used the laptop computer in her vehicle to begin drafting an application for a search warrant covering the motel room, Bartlett's vehicle and Bartlett's person. (Tr. at 23.) In preparing the

application for the search warrant, the officers talked with the district attorney and notified the signing judge that they would soon be presenting a search warrant application. (Tr. at 22.)

At that point, just prior to responding to meet the judge with the search warrant application, Detective Archuleta observed Bartlett and a female companion exit room 216 and leave the Motel 6 in Bartlett's green Subaru. (Aff. for S.W. at 5.)[1] Detective Archuleta, assisted by Officer Chacon, followed the Subaru into a McDonald's parking area located approximately 500 feet from the Motel 6. (Tr. at 11, 13.) The officers decided to stop the vehicle in order to question the occupants about whether a methamphetamine lab was in the motel room. Officer Chacon testified that the vehicle made the appropriate signals and turns, and the car was not stopped because of any improper driving pattern. (Tr. at 14, 15.)

Detective Archuleta and Officer Chacon stopped Bartlett's vehicle in the McDonald's parking lot. (Tr. at 8, 11.) The officers separated the vehicle's occupants and spoke with them individually. (Tr. at 30.) Officer Chacon spoke with the female occupant identified as Ms. Sarah Ann Keener. Detective Archuleta was present and overheard their conversation. (Tr. at 23.) Officer Chacon advised Ms. Keener of the reason for the stop and "asked her . . . if she knew of a meth lab in motel room 216." (Tr. at 9.) According to both Officer Chacon and Detective Archuleta, Ms. Keener said she had seen a meth lab in the room but she did not participate in running it. (Tr. at 9-10, 30.) She did acknowledge, however, that she had

---

[1]Officer Chacon testified that he "didn't recall" whether he saw Bartlett and his female companion get into the vehicle. (Tr. at 13.) However, Detective Archuleta stated in her affidavit in support of the search warrant that she personally "observed Bartlett and the unknown female, later identified as Sarah Ann Keener, leave the address sought to be searched." (Aff. for S.W. at 5.) Detective Archuleta testified that she then saw Bartlett's vehicle start to leave and travel to the McDonald's just north of the motel. (Tr. at 23.)

purchased some acetone for Bartlett earlier that day.  (Tr. at 9, 23; Aff. for S.W. at 5.)

In contrast, Ms. Keener attests in her affidavit that when the police stopped Bartlett's vehicle in the McDonald's parking lot she said she "did not want to speak with them and/or had nothing to tell them." (Keener Aff. at 1.)  She claims the officers then searched her purse and found a Walmart receipt for acetone.  (Keener Aff. at 2.)  Ms. Keener admits that she told the officers that she had purchased acetone, but she claims she did not tell the officers she purchased it for Bartlett.  (Keener Aff. at 2.)

The officers also sought to question Bartlett.  They advised him of his <u>Miranda</u> rights and he chose to invoke them. (Tr. at 28.)

Following the stop and detention of Bartlett's vehicle, Detective Archuleta incorporated the information she obtained during the traffic stop into her search warrant application.  The search warrant application was presented to a magistrate and approved.  The officers then searched Bartlett's motel room and seized evidence.  (Tr. at 8, 10.)

Bartlett filed a motion to suppress and a motion for a <u>Franks</u> hearing.  (Dkt. Nos. 22, 48.) Bartlett claims the evidence obtained as a result of the traffic stop must be suppressed because the initial stop and the subsequent detention of his vehicle were unlawful.  Bartlett claims the evidence obtained as a result of the search warrant for the motel room must be suppressed under <u>Franks</u> because the affidavit in support of the warrant "contained material, deliberate or reckless falsehoods and omissions, which when corrected, vitiate probable cause for the warrant."  In sum, Bartlett asserts that under the principles set forth in <u>Wong Sun v. United States</u>, 371 U.S. 471, 487-88 (1963), all of the evidence obtained as a result of the traffic stop and search of the

motel room must be suppressed as fruit of the poisonous tree.

## DISCUSSION

### I. The Stop and Detention of Bartlett's Vehicle

The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. Const. amend. IV. "Stopping a car and detaining its occupants for investigatory purposes constitutes a seizure within the meaning of the Fourth Amendment." United States v. Moran, 503 F.3d 1135, (10th Cir. 2007). The reasonableness of such a stop is reviewed under a two-part test set forth in Terry v. Ohio, 392 U.S. 1 (1968). Under that test, the court must make a dual inquiry asking first whether the officer's action was justified at its inception and second whether it was reasonably related in scope to the circumstances which justified the interference in the first place. Id.; United States v. Williams, 271 F.3d 1262, 1266 (10th Cir. 2001), cert. denied, 535 U.S. 1019 (2002).

#### A. Initial Justification for the Stop

"In order to conduct a lawful investigatory stop of a vehicle, the detaining officers must have, based on all the circumstances, 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" United States v. Leos-Quijada, 107 F.3d 786, 792 (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)); United States v. Soto, 988 F.2d 1548, 1554 (10th Cir. 1993) (providing an officer's "objectively reasonable articulable suspicion that illegal activity had occurred or was occurring" would justify stopping a vehicle). This analysis turns on an objective assessment of the officer's actions in light of the facts and

circumstances confronting him at the time.  See Maryland v. Macon, 472 U.S. 463, 470-71 (1985).  Courts "defer to the 'ability of a trained law enforcement officer to distinguish between innocent and suspicious actions.'"  United States v. Sanchez, 519 F.3d 1208, 1215 (10th Cir. 2008) (quoting United States v. Santos, 403 F.3d 1120, 1124 (10th Cir. 2005)).  The "likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying the preponderance of the evidence standard."  United States v. Arvizu, 534 U.S. 266, 274 (2002); see also United States v. Johnson, 364 F.3d 1185, 1194 (10th Cir. 2004) ("[A]s long as [the officer] has a particularized and objective basis for suspecting an individual may be involved in criminal activity, he may initiate an investigatory detention even if it is more likely than not that the individual is *not* involved in any illegal activity.").

      After reviewing the facts in this case, the court finds the officers acted reasonably in stopping Bartlett's vehicle because they had more than sufficient reasonable suspicion that illegal activity had occurred or was occurring.  At the time of the stop, Detective Archuleta had received a significant amount of information detailing Bartlett's drug activity.  The CI had identified Bartlett as the "Caucasian male" who was "producing methamphetamine at various locations in the county," and thereafter made three separate controlled purchases of methamphetamine, each time confirming that Bartlett was the seller.  The third controlled purchase occurred on June 15, 2006, the morning of the stop in question, and was made from a green Subaru registered to Bartlett.  The methamphetamine purchased on June 15th was moist and the CI told Detective Archuleta that Bartlett was cooking methamphetamine at the Motel 6.  Upon arriving at the Motel 6, Detective Archuleta found Bartlett's green Subaru in a parking

stall and confirmed with the general manager that Bartlett was a registered guest.  This information, along with other independent information gathered during the on-going investigation, confirmed the reliability of the CI.  Moreover, while conducting surveillance on the motel, the officers observed what they believed were at least two additional drug transactions from Bartlett's room.

Based on this information, the Court finds the officers had more than sufficient reasonable suspicion to justify stopping Bartlett's vehicle in order to further investigate whether he was manufacturing and selling methamphetamine.  Accordingly, the initial stop was valid and did not violate Bartlett's Fourth Amendment rights.[2]

**B.  The Subsequent Detention**

Having determined that the stop of Bartlett's vehicle was justified at its inception, the Court must ask "whether the officer's actions during the detention were reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 20.  The Supreme Court has made clear that "an investigative detention must be temporary, lasting no longer than necessary to effectuate the purpose of the stop, and the scope of the detention must be carefully tailored to its underlying justification." Florida v. Royer, 460 U.S. 491, 500 (1983).  Courts should "examine whether the police diligently pursued a means of

---

[2]While defense counsel makes much of the fact Detective Archuleta represented in her affidavit that the officers conducted a "traffic stop" of Bartlett's vehicle rather than an "investigatory stop," the Court finds this to be of no consequence so long as the officer's reasons for stopping the vehicle were lawful under the Fourth Amendment. See, e.g., United States v. Sanchez, 519 F.3d 1208, 1212 (10th Cir. 2008) (using term "traffic stop" in analysis of investigatory stop of defendant's vehicle); United States v. Crespin, Slip Copy, 2007 WL 4246298 (D. Utah Nov. 28, 2007) (characterizing stop of defendant's vehicle for investigative purposes as a "traffic stop").

9

investigation that was likely to confirm or dispel their suspicions quickly." United States v. Sharpe, 470 U.S. 675, 686 (1985).

The express purpose of the stop in this case was to determine whether there was a methamphetamine lab in Bartlett's motel room. The officers' actions – briefly questioning the vehicle's occupants – were narrowly tailored and specifically directed to confirming or dispelling their suspicions in this regard. Within a matter of minutes the officers spoke with Ms. Keener, who at the very least acknowledged she had recently purchased acetone, which Detective Archuleta knew from her training and experience was commonly used in manufacturing methamphetamine. (Aff. for S.W. at 5.) Similarly, the officers promptly read Bartlett his Miranda rights and respected his right to remain silent. Having already determined that the officers had reasonable suspicion of criminal activity sufficient to justify stopping the vehicle, the Court finds this brief subsequent detention was not unreasonable.

**II. The Validity of the Search Warrant and the Affidavit in Support**

Next, Bartlett asserts that the "fruits of the search warrant for the motel room must be suppressed under Franks." (Def.'s Mem. in Supp. of Mot. to. Supp. at 10.) Bartlett claims he is entitled to a Franks hearing because the affidavit in support of the search warrant contained deliberate falsehoods or reckless disregard for the truth. Bartlett asserts that without these falsehoods there is insufficient probable cause for the issuance of the warrant. (Id.)

"There is . . . a presumption of validity with respect to the affidavit supporting a search warrant." Franks v. Delaware, 438 U.S. 154 (1978). However, in Franks v. Delaware, 438 U.S.

154, 155-56 (1978), the Supreme Court held that in limited circumstances, a defendant is entitled to an evidentiary hearing to determine whether a warrant was issued in reliance on a deliberately or recklessly false affidavit.  To be entitled to a Franks hearing, a defendant must make a substantial showing that the warrant affiant made a false statement or omitted material information from the affidavit, and that the misrepresentation or omission was made knowingly or with reckless disregard for the truth.  Id.; United States v. Artez, 389 F.3d 1106, 1116 (10th Cir. 2004).  In addition, the defendant must show that the misrepresentation or omission was necessary to the finding of probable cause.  Id. at 156.  In other words, if after the allegedly false material is set aside there remains sufficient content in the affidavit to support a finding of probable cause, no hearing is required.  Id. at 171-72.

In this case, Bartlett claims that the affidavit contained "deliberate falsehoods or reckless disregard for the truth" because it (1) misstated Bartlett's criminal history; (2) inaccurately stated that Bartlett had recently been released from prison; and (3) misstated Ms. Keener's answers to Officer Chacon's questions during the investigatory stop of Bartlett's vehicle.  For the following reasons, the Court finds that Bartlett has failed to make the substantial preliminary showing that would entitle him to a hearing under Franks.

First, Bartlett contends that Detective Archuleta, the affiant, falsely represented his criminal history.  In the affidavit in support of the search warrant, Detective Archuleta stated that Bartlett had a criminal history of robbery, possession of a controlled substance, manufacture of a controlled substance, and possession of a controlled substance with intent to distribute.  (Aff. for S.W. at 5.)  Bartlett maintains that he has never been charged with or convicted of robbery,

although he was arrested for that offense in 1989.  (Def's Mem. in Supp. of Mot. to Supp. at 12.)  At the evidentiary hearing, Detective Archuleta testified that she obtained Bartlett's criminal history from the Salt Lake County Sheriff's Office computer resources.  (Tr. at 24.)  The document Detective Archuleta received in response to her computer inquiry was titled "Criminal History," and the Utah Criminal History Record maintained by the Utah Criminal Identification Bureau contains the very information Bartlett asserts to be false.  In light of the "Criminal History" Detective Archuleta received, the fact that the document may have included offenses for which Bartlett was arrested but not convicted does not rise to the level of a deliberate falsehood or reckless disregard for the truth on the part of Detective Archuleta.

Next, Bartlett argues that Detective Archuleta incorrectly stated that Bartlett had recently been released from prison.  Bartlett maintains that he has no prison number and has never been to or released from prison.  (Def's Mem. in Supp. of Mot. to Supp. at 12.)  Detective Archuleta testified both at the evidentiary hearing and in her affidavit that she received this information from a third-party, a fellow officer, and had no reason to know, therefore, that the information was not accurate.  In Rugendorf v. United States, 376 U.S. 528 (1964) the Supreme Court determined that erroneous statements, which were not those of the affiant, in an affidavit upon the basis of which a search warrant was issued, "fail to show that the affiant was in bad faith or that [s]he made any misrepresentations to the [magistrate] in securing the warrant."  Id. at 828-29.

Finally, Bartlett claims that Detective Archuleta misstated Ms. Keener's statements to Officer Chacon during the investigative detention of Bartlett's vehicle.  To support this claim,

Bartlett offered the affidavit of Ms. Keener in which she claims that she did not tell the police that there was a meth lab in the motel room, but rather told the police she had nothing to say. Ms. Keener further asserts that when the officers searched her purse, they found a Walmart receipt for acetone. She claims that although she admitted to purchasing the acetone earlier that day, she did not tell them that she purchased it for Bartlett or a meth lab. (Keener Aff. at 2.)

Having reviewed the affidavit of Ms. Keener and also observed the testimony of Officer Chacon and Detective Archuleta at the evidentiary hearing, the Court credits the officers' testimony and not Ms. Keener's. Ms. Keener's testimony was controverted by both Detective Archuleta and Officer Chacon. In addition, both officers testified in person, under oath, and were subject to cross examination. Ms. Keener, on the other hand, was not called as a witness and her testimony was offered by way of affidavit.

Moreover, even if the Court were to conclude that Bartlett had made the substantial showing required under Franks, he would not be entitled to a hearing in any event because even if the allegedly improper information were removed from the affidavit, the magistrate was presented with more than enough information to support a finding of probable cause. "The task of the [magistrate issuing a search warrant] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). This standard is based on the "totality of the circumstances, and the evidence collected "must be seen and weighed not in terms of library analysis by

scholars, but as understood by those versed in the field of law enforcement." Id. at 232.

In this case, Detective Archuleta was initially advised by a CI that a Caucasian male known as "Todd" was producing methamphetamine. Later, after viewing a picture of "David T. Bartlett" the CI confirmed that "Todd" was in fact Bartlett. Thereafter, Bartlett sold methamphetamine to the CI on three occasions and each time the CI confirmed that Bartlett was the seller. During the third transaction, which occurred within hours of obtaining the search warrant, the CI made a controlled purchase of moist methamphetamine from the green Subaru that was registered to Bartlett. Detective Archuleta knew that the "moist" product was indicative of recent manufacture, and the CI stated that Bartlett was "in the process of cooking methamphetamine." Detective Archuleta was then able to locate Bartlett's green Subaru at the Motel 6 and she personally observed "short term traffic" at Bartlett's motel room. The short term traffic included Detective Archuleta's observation of an "unknown female" entering the motel room carrying a "plastic grocery type bag." This investigation corroborated the information supplied by the CI, and the Court has already determined that based on this information the officers had more than the requisite reasonable suspicion necessary to stop Bartlett's vehicle. During the investigatory stop of Bartlett's vehicle, the "unknown female," now identified as Ms. Keener acknowledged she had purchased acetone that day.

Based on these facts – which are limited to the four corners of the search warrant affidavit and omit the portions objected to by Bartlett – the Court finds there was more than enough information to establish probable cause for the issuance of the warrant in this case.

## **CONCLUSION**

For the foregoing reasons, Bartlett's motion for <u>Franks</u> hearing is DENIED. Bartlett's motion to suppress is also DENIED.

Dated this 11th day of July, 2008.

_____
Dee Benson
United States District Court Judge